UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SKYLINE PARTNERS
TECHNOLOGY, LLC,

    Plaintiff,　　　　　　　　　　　Case Number:  8:22-cv-1128

v.

JABIL, INC.,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Skyline Partners Technology, LLC ("Skyline"), sues Defendant, Jabil, Inc. ("Jabil"), and states as follows:

## NATURE OF THE ACTION

1. Skyline bought the assets, but not the debt, of an operating business unit called Fastback out of a bankruptcy case. The prior owners of the Fastback business unit purchased inventory from Jabil. At the time of the bankruptcy filing by prior ownership, Jabil was owed money by Fastback.

2. After Skyline bought the Fastback business unit, but not the debt, out of bankruptcy, Skyline entered into a Manufacturing Services Agreement with Jabil (the "Agreement") effective as of July 1, 2017. Skyline was required to provide

:69264999_1

large monetary deposits to Jabil when the Agreement was entered. A true and correct copy of the Agreement is attached as Exhibit "1."

3. Skyline knew that Jabil was interested in recouping some of the old debt owed by Fastback, but misled Skyline into believing that the parties could have their own, independent, productive, and long term supply relationship. However, it appears that Jabil entered the agreement with the intention of working with Skyline only for as long as it took for Jabil to get paid for the old debt owed by the previous owner of the Fastback business unit.

4. After misleading Skyline into the Agreement, during the relationship, Jabil systematically overcharged the deposits. Once the deposits were depleted, Jabil dumped Skyline and terminated the Agreement. After terminating the Agreement, Jabil did not comply with the terms that apply on termination, and refused to refund amounts due and owing to Skyline.

5. Skyline brings this action to recover Jabil's wrongfully retained deposits and other damages arising from Jabil's wrongful conduct.

## PARTIES, JURISDICTION, AND VENUE

6. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties. Jabil is a corporation organized under the laws of the State of Delaware with its principal place of business located in St. Petersburg, Florida. Skyline is a limited liability company

organized under the laws of the State of Colorado with its principal place of business located in Texas. No member of Skyline is a citizen of the State of Delaware or the State of Florida and, therefore, there is complete diversity of citizenship in this matter. The amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), as Jabil is a citizen of the State of Florida and it is believed that a substantial part of the events or omissions giving rise to these claims occurred in this judicial district. Additionally, the venue selection clause of the Agreement selects Florida as the venue. Agreement § 21.16.

## GENERAL ALLEGATIONS

8. Fastback is an operating business unit that develops and publishes carrier Ethernet technology. Fastback's technology relates to 5G LTE service and high capacity private data networks. Fastback offers products that fuse high-capacity wireless and networking solutions to deliver fiber-equivalent service for both macro-cell and small-cell technologies.

9. Jabil is a large, multi-national manufacturing services corporation with a reported annual income in 2020 of approximately $27.3 billion. Jabil serves industries ranging from appliances to cloud computing and storage to defense to

healthcare to retail technology. Jabil also offers supply-chain and procurement services, and manages a vast network of suppliers.

10. The previous owners of the Fastback operating assets experienced financial distress and filed for bankruptcy prior to the events alleged in this Complaint. The prior owners of Fastback had incurred an unpaid debt owed to Jabil. The Fastback operating assets, but not its debt, were sold to Skyline in a bankruptcy court approved sale. At all times relevant to this dispute, the Fastback operating assets were owned by Skyline, and none of the debt which Jabil sought to have repaid was, in fact, a liability of Skyline.

11. There has never been any overlapping or common ownership between Skyline and the former owners of the Fastback operating assets.

12. When Skyline bought the Fastback operating assets, it needed a source of circuit boards in order to continue Fastback's operations after the court-approved sale.

13. Effective July 1, 2017, Skyline and Jabil entered into the Agreement by which Skyline would purchase electronic components and parts from Jabil, as well as electric circuit boards manufactured pursuant to Skyline specifications.

14. Skyline was aware that Jabil and the prior Fastback owners had a tumultuous relationship that had soured towards the end of their time working together. However, given the capabilities of Jabil and its familiarity with

Fastback's circuit-board needs, Skyline believed that it would be beneficial to obtain parts from Jabil.

15. During negotiations, Jabil insisted on being paid the debt owed by the previous owner of Fastback. In particular, Jabil's lead business person, Ms. Christen Kent, was clear that she intended to see Jabil paid for the prior owner's debt to Jabil. Ms. Kent's insistence on being paid the old debt owed by the prior owner became a central theme of the negotiations. Skyline advised Jabil that it had no legal or other obligation to pay the old debt of Fastback, could not pay, and would not pay the old debt. Jabil threated to walk away from the negotiations. Both parties knew that paying the old debt owed by an unrelated party would create a hardship on Skyline.

16. Skyline had no obligation to Jabil to assume Fastback's legacy debt, but it agreed to repay such debt over time with the understanding that this was a necessary concession to establishing a healthy and productive long term vendor relationship with Jabil. Skyline entered into the Agreement in the good faith belief that Skyline and Jabil were creating a mutually beneficial working relationship that would extend into the future and allow the Fastback business unit to become profitable.

17. As mentioned above, Jabil required Skyline to pay multiple large deposits before the relationship started. Skyline made a deposit of $726,480.00 for

"production"; a deposit of $82,820.90 for "inventory"; and a deposit of $1,145,136 for "turnkey."

18. On June 1, 2019, Skyline and Jabil executed an Addendum No. 1 to the Agreement (the "Addendum"). A true and correct copy of the Addendum is attached hereto as <u>Exhibit "2."</u>

19. The Addendum required Skyline to pay Jabil a "Restart Payment" of $372,000.00. In July of 2019, a payment of $40,000 was made to Jabil for this Restart Payment, and another $18,900 was credited to Jabil as a surcharge on shipped units. This left a $313,100.00 payment outstanding on the Restart Payment.

20. In September 2019, Skyline also made additional deposits to Jabil. This included an additional inventory deposit of consigned parts and components in the amount of $175,236.37.

21. On March 4, 2020, less than one year later, Jabil sent a notice of termination of the Agreement, with an effective date of June 4, 2020 (the "Termination Notice."). A true and correct copy of the Termination Notice is attached as <u>Exhibit "3."</u> The Agreement between the parties lasted less than three years.

22. The Termination Notice coincided with Jabil's claims that Skyline's deposits were exhausted.

23. Jabil stated that it was terminating the Agreement "for convenience" and no further explanation was given for the termination of the Agreement. The Agreement between the parties granted Jabil discretion as to when the Agreement could be terminated. In violation of the duty of good faith and fair dealing implied in all contracts, Jabil did not exercise its discretion reasonably in terminating the Agreement. This unreasonable termination constitutes a breach of the Agreement by Jabil.

24. On information and belief, the timing of Jabil's unreasonable termination of the Agreement was based on when Jabil's aggressive overcharging of the deposits had, in Jabil's opinion, exhausted the deposits fully. Terminating the Agreement because there were no more deposits to overcharge against was not a reasonable exercise of the discretion granted to Jabil in the Agreement.

25. Following the termination of the Agreement, Jabil also did not comply with the termination terms and did not comply with obligations it owed to Skyline.

26. Jabil charged incorrect, unreasonable, or arbitrary amounts against prepaid deposits made by Skyline that were not within the scope of the Agreement. Jabil has not returned the unearned deposits made by Skyline.

27. Jabil's inappropriate charges against the deposits include:

    a. not returning what Skyline had already paid of the Restart Payment, and claiming that the remaining amount due of the Restart Payment should be deducted from Skyline's deposits;

    b. incorrect inventory charges;

    c. incorrect business volume shortfall charges; and,

    d. other improperly calculated charges.

28. Throughout Skyline's relationship with Jabil, Jabil continually had variances, errors, and discrepancies in Jabil's reporting of components and parts inventory counts. Jabil's inventory system periodically showed errors and discrepancies that Jabil attributed to transfer timing, bulk part counts, etc. This has caused Skyline to suffer monetary losses after the termination of the Agreement:

    a. Jabil undervalued Skyline's September 2019 deposit. This deposit was for $175,236.37, but Jabil reflected this amount at $86,000 in its books; and

    b. Jabil has significantly overvalued the value of the inventory remaining at the end of the relationship. Jabil shipped back Skyline's inventory in two separate shipments on July 1 and 8, 2020. Skyline's third party assignee who received the inventory found that the packing list did not align with the items, and the items were deficient in both quantity and value. Skyline also had a new contract

manufacturer inventory the material, which corroborated Skyline's third party assignee's count of the inventory. This had the effect of overcharging Skyline's deposits with Jabil.

29. It is clear now that Jabil was intentionally and aggressively charging and overcharging against the initial deposits in order to recover the unpaid debts owed by the previous Fastback owner without any regard to treating Skyline fairly or in accordance with the terms of the Agreement.

## COUNT I
## Breach of Contract

30. Skyline realleges and incorporates by reference herein paragraphs 1-29.

31. This is a count for breach of the Agreement and Addendum.

32. The Agreement and the Addendum constitute a valid contract between the parties.

33. Jabil materially breached the contract between the parties, among other ways, by unreasonably exercising its discretion to terminate the Agreement because there were no more deposits to overcharge. This is a violation of the duty of good faith and fair dealing implied in all contracts.

34. Jabil also materially breached the contract between the parties, among other ways, by charging incorrect, unreasonable, or arbitrary amounts against prepaid deposits that were not within the scope of the Agreement.

35. Throughout Skyline's relationship with Jabil, Jabil continually had variances, errors, and discrepancies in Jabil's reporting of components and parts inventory counts. These actions constitute a further breach of contract.

36. These breaches by Jabil have caused monetary damages to Skyline in excess of $75,000, exclusive of interest, attorneys' fees, and costs.

WHEREFORE, Plaintiff, Skyline Partners Technology, LLC, demands judgment against Defendant, Jabil, Inc., for any and all compensatory damages, incidental damages, late fees, prejudgment interest, costs, attorneys' fees pursuant to the Agreement, and any other applicable law, and other damages, and any and all other relief this Court deems necessary, just and proper.

## COUNT II
### Unjust Enrichment (in the alternative to breach of contract)

37. Skyline realleges and incorporates by reference herein paragraphs 1-29.

38. This is a count for unjust enrichment as an alternative to Skyline's breach of contract action.

39. Skyline conferred a benefit on Jabil in the form of the several deposits made to Jabil.

40. Jabil has knowledge of and has acknowledged receipt of those deposits and Jabil accepted and retained the benefits of these deposits.

41. As described in the General Allegations, Jabil has improperly refused to return the unearned deposits to Skyline.

42. The circumstances render Jabil's retention of the unearned benefits of the deposits inequitable.

43. These actions by Jabil have caused monetary damages to Skyline in excess of $75,000, exclusive of interest and costs.

WHEREFORE, Plaintiff, Skyline Partners Technology, LLC, demands judgment against Defendant, Jabil, Inc., for any and all compensatory damages, incidental damages, late fees, prejudgment interest, costs, attorneys' fees pursuant to any applicable law, and other damages, and any and all other relief this Court deems necessary, just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Skyline respectfully prays as follows:

1. That proper process issue and be served on Defendant Jabil;

2. That the Court find that Jabil breached the contract with Skyline and is liable for damages to Skyline in an amount to be determined at trial;

3. That, in the alternative to breach of contract, the Court find that Jabil was unjustly enriched by its actions and is liable for damages to Skyline in an amount to be determined at trial;

4. That the Court enter judgment in Skyline's favor and against Jabil for damages as are fair and reasonable, including actual damages, consequential damages, and equitable relief;

5. That the Court award Skyline pre-judgment and post-judgment interest, costs, and attorney's fees to the extent permitted by the law; and

6. That the Court award Skyline such other, further, and general relief as the Court may deem just and proper.

> Respectfully Submitted,
>
> */s/ Kenneth M. Curtin*
> Kenneth M. Curtin, Esq.
> Florida Bar No.: 0087319
> Primary: Kenneth.Curtin@arlaw.com
> Secondary: Teresa.Soluri@arlaw.com
> ADAMS AND REESE LLP
> 100 North Tampa Street, Suite 4000
> Tampa, FL 33602
> Telephone: (813) 402-2880
> Fax: (813) 227-5636
>
> - and -
>
> Robert J. Mendes, TN BPR No. 17120
> Micah N. Bradley, TN BPR No. 38402
> Sherrard Roe Voigt & Harbison, PLC
> 150 3rd Avenue South, Suite 1100
> Nashville, Tennessee 37201
> 615.209.7477 Phone
> bmendes@srvhlaw.com
> mbradley@srvhlaw.com
> (Subject to *Pro Hac Vice* Applications)
> *Attorneys for Plaintiff Skyline Partners Technology, LLC*